# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| LINDA G. GRIFFITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 2:14-cv-02244-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Linda G. Griffith ("Griffith") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Griffith timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Griffith filed her application for a period of disability and DIB in July 2011, alleging she became unable to work beginning March 31, 2005. (Tr. 101-04). Griffith was a fifty-seven year old female on June 30, 2009, her date last insured ("DLI"). (Tr. 22, 103). Griffith has at least a high school education and past relevant work as a dispatcher. (Tr. 47, 141). The Agency

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

initially denied Griffith's application, and Griffith requested a hearing where she appeared in March 2013. (Tr. 31-51). After the hearing, the Administrative Law Judge ("ALJ") denied Griffith's claim on April 12, 2013. (Tr. 20-27). Griffith sought review by the Appeals Council, but it declined her request on September 20, 2014. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On November 19, 2014, Griffith initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999);

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Griffith last met the insured status requirements of the Social Security Act on June 30, 2009 (her date last insured or "DLI"), and that Griffith had not engaged in substantial gainful activity from her alleged onset date of March 31, 2005 through her DLI. (Tr. 22). At Step Two, the ALJ found Hicks has the following severe impairments: irritable bowel syndrome, hiatal hernia, gastroesophageal reflux disease, obesity, chronic obstructive pulmonary disease, status post bilateral knee replacement, and status post cervical fusion. (*Id.*). At Step Three, the ALJ found Griffith did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).

Before proceeding to Step Four, the ALJ determined Griffith's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, through her DLI, Griffith had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except Griffith could occasionally balance,

stoop, kneel, crouch, crawl, and climb ramps and stairs but never ladders, ropes, or scaffods; must avoid concentrated exposure to extreme cold, extreme heat, fumes odors, dusts, gases and poor ventilation; must work in an environment that does not have stringent production or speed requirements.  (Tr. 23-26).

At Step Four, the ALJ determined, through the date last insured, Griffith was capable of performing her past relevant work as a dispatcher.  (Tr. 26).  Therefore, the ALJ determined Griffith had not been under a disability and denied her claim.  (Tr. 26-27).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Griffith failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Griffith challenges the Commissioner's decision on two specific grounds, contending: (1) the ALJ failed to develop the record when he did not obtain a medical opinion; and (2) the record, including the ALJ's RFC findings, support a finding of disability under the Medical Vocational Rules.  (Doc. 12 at 5-9).  Neither of these grounds supports reversal.

### A.  The ALJ Was Not Required to Utilize a Medical Expert

Establishing the onset of disability prior to the DLI is necessary for a claimant seeking

disability insurance benefits.  42 U.S.C. §§ 416(i)(3), 423(a); 20 C.F.R. §§ 404.101, 404.130, 404.131 (2014); *see Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Any impairment that arose after the claimant's DLI, when her insured status expired, cannot be the basis for a finding of disability.  *See Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986); *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).  Thus, the ALJ properly focused on the record as it existed prior to June 30, 2009.

Griffith argues the Social Security Ruling 83-20 ("SSR 83-20"), 1983 WL 31249 (Jan. 1, 1983), requires an ALJ to obtain an opinion from a medical expert to determine her disability onset date.  (Doc. 12 at 5-7).  SSR 83-20 applies when there has been a finding of disability, and it becomes necessary to determine when that disability originated.  SSR 83-20 at *1 ("PURPOSE: To state the policy and describe the relevant evidence to be considered when establishing the onset date of disability . . . ." and "In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability . . . .").  Here, the ALJ did not find Griffith disabled, either before or after her DLI, and he had no need to determine the onset date.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) ("Since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required.").

There is sufficient evidence to support the ALJ's determination that Griffith could perform light work with certain limitations and was therefore not disabled prior to her DLI.  Griffith has failed to meet her burden to prove she was disabled prior to June 30, 2009, and testimony from a medical expert would not change the substantial record evidence supporting the ALJ's decision.

Griffith specifically argues the ALJ should have obtained an opinion from a medical

expert to assist in identifying signs and symptoms of impairments prior to her DLI and argues the ALJ improperly made inferences from the record. (Doc. 12 at 6-7). This argument ignores the basic nature of the disability evaluation process and the ALJ's role. The Social Security Act specifically provides that the Commissioner is responsible for deciding whether a claimant is disabled. 42 U.S.C. § 405(b)(1). The Act also states that the Commissioner "shall have full power and authority to make rules and regulations and to establish procedures, . . . and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence . . . to establish the right to benefits hereunder." 42 U.S.C. § 405(a). In accordance with the Act, the Commissioner has established that when a claimant appeals to the hearing level, the ALJ is responsible for determining whether the claimant is disabled. 20 C.F.R. §§ 404.929, 404.944, 404.946.

Regarding issues such as whether the claimant's impairments meet or equal a listed impairment, the assessment of the claimant's RFC, the application of vocational factors, and whether the claimant is disabled, the regulations specifically state that the responsibility for deciding these issues rests with the Commissioner, i.e., the ALJ in Griffith's case. 20 C.F.R. § 404.1527(d).

Opinions on these issues "are opinions on issues reserved for the Commission because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404. 1527(d); *see* SSR 96-5p, 1996 WL 374183 (July 2, 1996); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Although the ALJ will consider opinions from acceptable medical sources on ultimate issues, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F>R. § 404.1527(d)(2). *See* SSR 96-5p.

Use of a medical expert is generally at the discretion of the ALJ. *See* Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-5-32, 2014 WL 637369. An ALJ is not obligated to seek independent medical testimony before deciding a claim when the record provides sufficient evidence to support his or her decision. *Wilson v. Apfel*, 179 F.3d 1276, 1287 (11th Cir. 1999). Furthermore, the ALJ's RFC finding does not need to mirror the findings or opinion or any particular medical source. Such a requirement would confer upon the physician the authority to determine the RFC, and "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p, 1996 WL 374183, at *2; *see Shaw v. Astrue*, 392 Fed. Appx. 684, 687 (11th Cir. 2010); *Robinson v. Astrue*, 365 Fed. Appx. 993, 999 (11th Cir. 2010).

Griffith contends that a medical expert might have assisted the ALJ in considering the effects of her obesity pursuant to SSR 02-1p, 2002 WL 628049 (Sept. 12, 2002). (Doc. 12 at 8). However, the ALJ properly accounted for Griffith's obesity at multiple stages of the sequential evaluation process. The ALJ found Griffith's obesity to be a severe impairment at step two; the ALJ considered Griffith's obesity in combination with other impairments at step three, determining they did not meet or medically equal one of the listed impairments; and the ALJ considered Griffith's obesity in formulating Griffith's RFC at step four. (Tr. 22-23). Furthermore, Griffith introduced no evidence of any functional limitations resulting from her obesity that the ALJ did not consider. As a condition is only relevant to the extent to which it limits the claimant's work, the ALJ adequately considered Griffith's obesity.

To the extent Griffith argues a medical expert could have address her ability to maintain concentration, persistence, or pace, (doc. 12 at 8), this factor is only an issue when considering a mental impairment. 20 C.F.R. § 404.1520a(c)(3). The ALJ did not find Griffith had a severe

mental impairment, and she has alleged no error in that regard. Furthermore, the ALJ's restriction of Griffith to non-stringent production or speed requirements addresses her gastrointestinal impairments, not mental impairments.

Finally, Griffith's argument that the ALJ's restriction to non-stringent production or speed requirement is "vague and not readily vocationally quantifiable," (doc. 12 at 8), is belied by the fact the ALJ properly relied on testimony of a vocational expert ("VE") to conclude that Griffith could perform her past relevant work. Griffith's representative stipulated to the VE's qualifications and declined the opportunity to cross-examine the VE. (Tr. 47-49, 71-72). The ALJ applied the proper legal standards and was not required to utilize a medical expert.

**B. Substantial Evidence Supports the ALJ's RFC Finding, Which Does Not Require a Finding of Disabled**

Griffith argues that because of the postural restrictions the ALJ found, the appropriate exertional level for her was sedentary, not light. (Doc. 12 at 9). Substantial evidence supports the ALJ's RFC assessment that Griffith could perform light work, with certain postural and environment limitations, and no stringent production requirements. (Tr. 22). The inclusion of postural limitations does not convert the exertional level of the work.

In support of his RFC assessment, the ALJ cites objective medial evidence concerning Griffith's gastrointestinal issues that predated her DLI. (Tr. 24-25). The ALJ notes Griffith's June 2006 and March 2007 diagnosis for reflux esophagitis, hiatal hernia, GERD, and IBS. (Tr. 24, 226, 228, 238). The ALJ discusses Griffith's March 2008 consultation with Rohit Malik, M.D., a gastroenterologist, for chest pain not due to a heart problem. (Tr. 24-25, 36t0-63, 390). Furthermore, CT scans from May 2008 of Griffith's abdomen and pelvis show no abnormal findings. (Tr. 369-70).

The ALJ noted that a year later, in March 2009, Griffith presented with shortness of

9

breath and Dr. Malik assessed her with complicated reflux, with possible silent aspiration exacerbating pulmonary symptoms, microcytosis of uncertain etiology, and epigastric pain. (Tr. 25, 358-59). The ALJ noted that in May 2009, Griffith reported her chronic diarrhea had resolved and she had an excellent response to other medication. (Tr. 377). Another gastroenterologist, Mukul Mehra, M.D., indicated "[s]he feels that her symptoms are all but gone." (Tr. 377). The ALJ noted this was the last gastrointestinal evidence prior to Griffith's DLI. (Tr. 25).

The ALJ also reviewed evidence of Griffith's musculoskeletal impairments, including her knee and spine surgery, noting the records did not reveal significant clinical or laboratory abnormalities consistent with disabling conditions. (Tr. 25). The ALJ noted that in February 2008, Griffith presented with bilateral knee pain and was diagnosed with osteoarthritis and failed medical compartment unification of the left knee by Shane Buggay, M.D., an orthopedic surgeon. (Tr. 25, 205, 310). An August 2008 total left knee arthroscopy was successful. (Tr. 25, 222). The ALJ noted Griffith reported to Dr. Buggay her knee was doing very well as of February 2009. (Tr. 25, 306-07).

Regarding Griffith's cervical condition, the ALJ noted she complained of neck and arm pain in December 2008. (Tr. 25, 304). Dr. Buggay indicated neither pain medication nor physical therapy helped with the pain. (Tr. 304-05). As the ALJ noted, in February 2009, Dr. Buggay performed cervical decompression surgery for diagnosis of cervical radicular pain, spondylosis, and disk osteophyte complex at C5-6 and C6-7. (Tr. 25, 315-17). Later in February 2009, at a post-operative visit, Griffith reported her arm pain was completely gone and she was doing well. (Tr. 25, 303).

Similarly the ALJ found the medical records regarding Griffith's COPD did not reveal

significant clinical and laboratory abnormalities consistent with disabling conditions prior to her DLI. (Tr. 25). He noted Griffith stopped smoking in 2007, but had previously smoked two to three packs a day. (Tr. 25, 361). The ALJ recognized Griffith was hospitalized in 2009 for severe COPD exacerbation with shortness of breath (dyspnea) and severe bronchospasm. (Tr. 25, 463, 64). A follow-up pulmonary function test in April 2009, revealed only mild COPD with recent severe asthmatic bronchitis, likely asthma, and probable sleep apnea. (Tr. 25, 320).

The ALJ accounted for Griffth's physical impairments by limiting her to light work with postural limitations. (Tr. 26). The ALJ accounted for her COPD with environmental restrictions, specifically avoidance of extreme temperatures, odors, dusts, and gases. (Tr. 26). Finally, he accounted for Griffith's GERD, which might require frequent bathroom breaks, even though the evidence showed that the impairment had been resolved with treatment, by restricting her from working in an environment with stringent production or speed requirements. (Tr. 26).

Griffith identifies no evidence the ALJ overlooked or that contradicts his findings, and substantial evidence supports the ALJ's finding that her impairments did not render her disabled prior to her DLI.

Griffith cites the Medical Vocational Guideline ("Grid Rule") 201.06, 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.06, and argues that under this Grid Rule, she would have been found disabled.[4] (Doc. 12 at 6). First, the ALJ did not reach step five because he found Griffith could perform her past relevant work, therefore he did not apply a Grid Rule. (Tr. 26). *See* 20 C.F.R. §404.1520(a)(4). Only when a claimant proves she cannot perform her past relevant work, must

---

[4] The Grids allow for consideration of factors such as age, exertional ability, and educational level. 20 C.F.R. pt. 404, subpt. P, app 2. The various combinations of these factors yields a finding of "disabled" or "nondisabled." When a claimant's vocational characteristics coincide with the factors in the Grids, the existence of jobs in the national economy is established and the Grids direct a conclusion on disability. *See* 20 C.F.R. §§ 404.1569, 404.1569a; 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b).

11

the Commissioner produce evidence that other work exists that the claimant could perform given her RFC and other vocational characteristics. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The ALJ was not required to proceed to step five once he found Griffith was disabled at step four.  20 C.F.R. 404.1520(a)(4).  Substantial evidence supports the ALJ's findings.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Griffith's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 11th day of March 2016.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE